## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

VINAY SAINI,

     Plaintiff,

v.                                                              Civ. No. 24-113 MV/GBW

HOSPITAL CARE
CONSULTANTS, INC.,

     Defendant.

### PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

THIS MATTER comes before me on Defendant Hospital Care Consultants, Inc.'s

Motion to Dismiss (*doc. 10*) pursuant to the Honorable Judge Martha Vázquez's Order

of Reference Relating to Non-Prisoner Pro Se Cases (*doc. 18*), referring this case to me

for analysis, findings of fact, evidentiary hearings if warranted, and recommendations

for its ultimate disposition.  Having reviewed the Motion and associated briefing (*docs.

15, 19*) and being otherwise fully informed, I RECOMMEND that the Court grant

Defendant's Motion in full.

### I.    PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff's Original Complaint ("Complaint") brings a variety of federal and state

claims against his former employer, Defendant Hospital Care Consultants, Inc. ("HCC")

based on actions that Defendant took before and after it terminated Plaintiff from his

employment.  *See generally doc. 1.*

In his Complaint, Plaintiff alleges that he was employed by Defendant HCC as a foreign worker on an H-1B visa in 2018.  *Doc. 1* ¶¶ 11-12.  Plaintiff's national origin, race, and ethnicity is Indian.  *Id.* ¶ 7.  Between January and May 2018, Plaintiff "expressed internal grievances about his changing wages, bonuses, and working conditions with HCC's Director of Operations, Ms. Rebecca Brown."  *Id.* ¶ 15.  In response to these grievances, Ms. Brown made "multiple adverse comments" such as a comment that "[p]erhaps in [Plaintiff's] culture and where [Plaintiff] come[s] from it is OK to act without consideration or compassion," a comment that Plaintiff was "the complaining Indian doctor," and a comment that "doctors like [Plaintiff] should be glad that they have a job."  *Id.* ¶¶ 16, 26.  Plaintiff also alleges that HCC's site supervisor, Dr. Sherpa, told Plaintiff "to be careful bringing up issues 'because [Plaintiff is] a foreigner and on a visa.'"  *Id.* ¶ 17.

On October 5, 2018, HCC terminated Plaintiff's employment by letter, stating that Plaintiff "had materially breached his employment contract."  *Id.* ¶ 27.  Based on this reason for his termination, Plaintiff reportedly did not believe that he was required to report his termination to the New Mexico Medical Board ("NMMB").  *Id.* ¶ 35.  However, Plaintiff alleges that the NMMB took the opposite position and "publicly reprimanded" Plaintiff in 2021 "for his failure to report termination of his employment."  *Id.* ¶¶ 36, 43.  Plaintiff also alleges that although Defendant HCC "was

aware of NMMB's investigation, . . . it did nothing to defend or indemnify [Plaintiff] as defined required [sic] by their employment contract."  *Id.* ¶ 37.

On July 18, 2019, Plaintiff filed a complaint against Defendant HCC with the Department of Labor ("DOL") Wage and Hour Division on the basis of HCC's "wage practices and discrimination."  *Id.* ¶ 38.  In May 2022, DOL issued a determination in which it found that "HCC had committed actionable H-1B visa violations and owed [Plaintiff] back wages."  *Id.* ¶ 44.  On October 19, 2022, DOL disclosed its investigative files and Plaintiff learned that HCC had stated during the DOL investigation that Plaintiff was fired "for patient care issues."  *Id.* ¶ 46.  Both Plaintiff and HCC appealed the DOL determination, and the agency held an administrative hearing in the matter on April 14, 2023.  *Id.* ¶¶ 45, 48.  On January 4, 2024, the agency issued a final determination which found for Plaintiff as the prevailing party.  *Id.* ¶ 56.

On July 3, 2023, Plaintiff filed a complaint with the New Mexico Human Rights Bureau ("NMHRB"), and the complaint was dual-filed with the Equal Employment Opportunity Commission ("EEOC").  *Id.* ¶¶ 57, 59.  In response to NMHRB's investigation, HCC allegedly stated that Plaintiff was "removed at its clients' requests." *Id.* ¶ 61.  On November 14, 2023, NMHRB dismissed Plaintiff's complaint and on January 10, 2024, EEOC adopted NMHRB's findings and issued Plaintiff a right to sue letter.  *Id.* ¶¶ 64, 66.

Plaintiff filed the instant action in federal court on February 5, 2024. *See generally id.* Defendant moved to dismiss all of Plaintiff's claims on March 11, 2024. *Doc. 10.* Plaintiff responded to Defendant's Motion to Dismiss on March 25, 2024, *see doc. 15*, and briefing on the Motion was complete on April 8, 2024, with the filing of Defendant's reply, *doc. 19.* The case was referred to the undersigned by the Honorable Judge Martha Vázquez on April 3, 2024. *Doc. 18.*

## II.   Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Leverington v. City of Colorado Springs*, 643 F.3d 719, 723 (10th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard does not require "detailed factual allegations," but it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When ruling on a 12(b)(6) motion, the court must "assume the truth of all well-pleaded facts in the complaint, and draw all reasonable inferences therefrom in the light most favorable to the plaintiffs." *Leverington*, 643 F.3d at 723 (quoting *Dias v. City & Cnty. Of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009)). However, the court need not accept the truth of any legal conclusions. *Iqbal*, 556 U.S. at 678.

The plausibility standard "does not impose a probability requirement."

*Twombly*, 550 U.S. at 556.  Rather, "a well-pleaded complaint may proceed even if it appears 'that a recovery is very remote and unlikely.'"  *Id.* at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).  The complaint must only be "enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. at 555.  However, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct"; otherwise, the plaintiff has not shown entitlement to relief.  *Id*. at 679.

　　　Plaintiff is proceeding pro se, and "[a] pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  This rule means that "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with the pleading requirements."  *Id*.  The liberal rule of construction, however, "does not relieve plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."  *Id*.  "[C]onclusory allegations

without supporting factual averments are insufficient to state a claim on which relief

can be granted." *Id*.

### III.   ANALYSIS

Plaintiff brings eight counts under both federal and state law.  Each count is

addressed below.  Based on the following reasoning, the undersigned recommends that

the Court dismiss all of Plaintiff's claims.

### A. Count I – Discrimination, Hostile Work Environment, and Retaliation under Title VII and the New Mexico Human Rights Act

Plaintiff first claims that Defendant HCC discriminated against him based on his

race and national origin in violation of the NMHRA and Title VII when it terminated

him from his position, when it created a hostile work environment for Plaintiff, and

when it retaliated against him "for reporting discriminatory employment practices to

DOL and participating in its investigation."  *Doc. 1* ¶¶ 73-75.  Defendant generally

argues that Plaintiff's claims under the NMHRA and Title VII fail because the statute of

limitations on both claims has run or, in the alternative, because Plaintiff has failed to

state a claim on which relief can be granted.  *Doc. 10* at 3-7.

The NMHRA and Title VII protect employees from employment discrimination

based on race, religion, sex, or national origin.  *See* N.M. Stat. Ann. § 28-1-7; 42 U.S.C. §

2000e, *et seq*.  Both laws require an individual alleging employment discrimination to

exhaust administrative procedures before he may sue in court.  Under New Mexico law,

a complainant must file a charge of discrimination with the New Mexico Human Rights

Bureau ("NMHRB") "within three hundred days after the alleged act was committed."

N.M. Stat. Ann. § 28-1-10(A).  Under federal law, a complainant, like Plaintiff, who first

brings a claim with a state agency that adjudicates employment discrimination

disputes, must file a discrimination charge with the Equal Employment Opportunity

Commission ("EEOC") "within three hundred days after the alleged unlawful

employment practice occurs or within thirty days after receiving notice that the State or

local agency has terminated the proceedings under the State or local law, whichever is

earlier."  42 U.S.C. § 2000e-5(e)(1).

     *i.*     *Discrimination*

     Plaintiff's discrimination claims under both the New Mexico Human Rights Act

("NMHRA") and Title VII of the federal Civil Rights Act fail because he did not bring

these claims within the time period mandated by the statute of limitations.  Plaintiff

states in his Complaint that Defendant discriminated against him when it "terminat[ed]

his employment because of his race and national origin," *doc. 1* ¶ 68, an event which

occurred on October 5, 2018, approximately four years and nine months before he filed

a charge of discrimination with the NMHRB on July 3, 2023, *id.* ¶¶ 27, 57.  As a result,

the statute of limitations on both the NMHRA and Title VII discrimination claims ran

prior to Plaintiff filing his complaint with the NMHRB.

In his response to the instant Motion, Plaintiff argues that his federal discrimination claims are not barred by the statute of limitations because his claims were equitably tolled due to actions by Defendant as well as Plaintiff's ongoing proceeding with the Department of Labor. *Doc. 15* at 4-7. Plaintiff further argues that his state law discrimination claim under the NMHRA is subject to tolling pursuant to the discovery rule. *Id.* at 7-8. The undersigned disagrees and will address each issue below.

Plaintiff's federal discrimination claim was not equitably tolled based on Defendant's actions after Plaintiff was terminated from his position. Under Tenth Circuit law, an employment discrimination claim generally "accrues when the disputed employment practice – the demotion, transfer, firing, refusal to hire, or the like – is first announced to the plaintiff." *Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1177 (10th Cir. 2011). However, equitable tolling of the Title VII claim may be appropriate when "circumstances of the case rise to the level of active deception" such as when "a plaintiff has been lulled into inaction by [his] past employer, state or federal agencies, or the courts" or when the plaintiff is "actively misled or has in some extraordinary way been prevented from asserting his or her rights." *Biester v. Midwest Health Svs., Inc.*, 77 F.3d 1264, 1267-68 (10th Cir. 1996) (citations omitted).

The typical rule that an employment discrimination claim accrues at time of termination applies here because Plaintiff had sufficient information at the time of

termination to bring his claim. *Almond*, 665 F.3d at 1177.  Plaintiff argues that his claim

should be equitably tolled because Defendant provided him with false information

about the reason for his termination which prevented him from "form[ing] a reasonable

belief of discrimination earlier." *Doc. 15* at 7.  According to Plaintiff's Complaint,

Defendant HCC originally informed him that he was terminated for a "material breach

of contract" and then later stated that he was terminated for "patient care issues."[1] *Doc.*

*1* ¶¶ 27, 46.  If Defendant had initially informed Plaintiff that he was fired for "patient

care issues," Plaintiff argues that he would have known that the true reason for his

termination was discrimination since his "work performance was impeccable and other

non-Indian doctors were not terminated for such issues." *Doc. 15* at 7.  However,

Plaintiff alleges that his supervisors at Defendant HCC made racially motivated

comments about Plaintiff, his employment status, and his immigration status before he

was terminated. *Doc. 1* ¶¶ 16-17, 26.  Plaintiff also alleges that he filed a complaint with

DOL on July 18, 2019 (286 days after his termination) on the basis of Defendant HCC's

"wage practices and discrimination" and that he "expressed his concerns about

unlawful discrimination and retaliation" during the DOL investigation. *Id.* ¶¶ 38, 41.

---

[1] Plaintiff allegedly did not learn of Defendant's statement that Plaintiff was fired for "patient care issues" until October 19, 2022, less than 300 days before he filed his discrimination claim with the NMHRB. *Doc. 1* ¶ 46.  Thus, if Defendant's statement started the clock on Plaintiff's discrimination claim, Plaintiff would have filed the claim within the requisite statute of limitations.

These allegations suggest that Plaintiff had a reasonable basis to suspect discrimination at the time of his termination.

Further, Defendant's supposedly inconsistent statements about the reason for Plaintiff's termination do not constitute "active deception" which would toll Plaintiff's claim. *See Biester*, 77 F.3d at 1267. First, it is feasible that Plaintiff's "patient care issues" were the basis of the material breach of Plaintiff's contract meaning that although Defendant's initial statement in the termination letter was vague, it was not deceptive or actively misleading. Alternatively, if Plaintiff believed that he did not commit a material breach and Defendant's statement was misleading (or inaccurate), Plaintiff would have been alerted at the time of his termination that Defendant may have fired him for alternative and perhaps discriminatory reasons and that Plaintiff had a potential cause of action under Title VII. In fact, Plaintiff alleges that he attempted to inquire with Defendant about the basis for the material breach of contract, *doc. 1* ¶ 30, which suggests that he had concerns about this reason for his termination at the time of termination. Although Plaintiff also alleges that Defendant declined to answer his inquiries about the basis for the material breach of contract, *id.* ¶ 31, Defendant's actions did not prevent or even discourage Plaintiff from filing a discrimination claim, or otherwise deceive or mislead him about his ability to file a claim. As a result, Plaintiff's claims were not tolled by any action of Defendant.

Plaintiff's second argument that his claims were tolled throughout the Department of Labor proceeding also fails. As noted above, Plaintiff filed a complaint against Defendant HCC with the Department of Labor, Wage and Hour Division after his termination. *Doc. 1* ¶ 38. In his response, Plaintiff argues that this complaint with DOL tolled his Title VII claim because various federal agencies work together to protect foreign workers from employment discrimination and that "[g]enerally, a charge filed with one federal agency is sufficient to meet filing requirements of another agency" such that "timely charges that are filed with the wrong federal agency will be preserved." *Doc. 15* at 4-5. Indeed, there are rare circumstances in which a plaintiff's claims are tolled even though he filed his claim in the wrong forum. *See Turgeau v. Admin. Review Bd.*, 446 F.3d 1052, 1060 (10th Cir. 2006) (finding that a plaintiff who filed a claim in state court under a particular state law preserved his legal claim even after the court found that federal law completely preempted the state law, and the plaintiff was required to reassert his claim under federal law). However, "equitable tolling does not apply when the plaintiff has 'separate, distinct, and independent' remedies, and has simply slept on his rights with regard to one of them." *Id.* (citing *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 461, 465-66 (1975)). Plaintiff filed a claim with the Wage and Hour Division of the DOL which handles wage, overtime, and working conditions issues under the Fair Labor Standards Act and other federal laws. Plaintiff states that he filed a complaint with DOL for "HCC's wage practices and *discrimination*," *doc. 1* ¶

38 (emphasis added), but this division does not handle employment discrimination claims.  As a result, Plaintiff did not simply file his discrimination claim in the wrong forum – rather, he filed a separate and distinct wage claim with the DOL and declined to file a discrimination claim until he filed his complaint with the NMHRB in July 2023. Even assuming that Plaintiff, in good faith, believed he was filing a discrimination claim with DOL,[2] Plaintiff should have known in May 2022 that DOL would not adjudicate a discrimination claim when DOL issued its initial determination that "HCC had committed actionable H-1B visa violations and owed [Plaintiff] back wages."  *Doc. 1* ¶ 44.  Plaintiff still declined to file his discrimination claim with the NMHRB until approximately 13 months after the DOL initial determination.[3]

Finally, the undersigned disagrees that Plaintiff's state law discrimination claim was tolled pursuant to the discovery rule.  In New Mexico, the discovery rule states that

---

[2] It is unlikely that even a good faith filing of a discrimination claim with the DOL would save Plaintiff's Title VII claim.  Although courts are to construe pro se filings liberally, the Tenth Circuit "has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants."  *Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citation omitted).  Plaintiff could have likely discovered that the DOL would not adjudicate his discrimination claim by researching the agency online or by speaking with someone from the agency.  *See McCoy v. Damron*, 9 Fed. App'x 994, 996 (10th Cir. 2001) (finding that even for pro se litigants, "ignorance of the law is not grounds for tolling the statute of limitations") (citing *Marsh v. Soares*, 223 F.3d 1217, 1220 (10th Cir. 2000)).

[3] Plaintiff also argues that he could not have filed a claim with the EEOC during the pendency of the DOL proceedings because the Immigration and Nationality Act ("INA") "contains an election of remedies clause and prohibits a foreign worker from simultaneously pursuing claims under Title VII."  *Doc. 15* at 5 (citing 8 U.S.C. § 1324b).  Plaintiff is correct that an individual may not file a claim under 8 U.S.C. § 1324b(a)(1)(A) simultaneously with a claim under Title VII.  However, claims under 8 U.S.C. § 1324b(a)(1)(A) are filed with and adjudicated by a Special Counsel for Immigration-Related Unfair Employment Practices within the Department of Justice.  *See* 8 U.S.C. § 1324b(c)(1).  Plaintiff has not alleged that he filed any such claim.

a statute of limitations on a claim does not begin to accrue until the plaintiff "knows or should know the relevant facts, whether or not the plaintiff also knows that the facts are enough to establish a legal cause of action." *Slusser v. Vantage Builders, Inc.*, 306 P.3d 524, 529 (N.M. Ct. App. 2013). Plaintiff again argues that he did not realize that he was terminated for discriminatory reasons until he was informed in October 2022 that Defendant fired him for "patient care issues." *Doc. 15* at 8. However, as with his federal discrimination claim, Plaintiff knew he was injured on the day he was terminated, and he knew that his supervisors had made discriminatory comments to him prior to his termination. This information was sufficient to alert Plaintiff to a potential cause of action and start the clock on his state discrimination claim.

Because Plaintiff failed to file his NMHRA and Title VII discrimination claims with 300 days of when his claims accrued and because the claims are not subject to tolling, the undersigned recommends dismissing Plaintiff's discrimination claims.

ii.     *Hostile Work Environment*

Plaintiff's state and federal hostile work environment claims fail because Plaintiff did not file the claim within the requisite statute of limitations and because he failed to state a claim for which relief can be granted. Plaintiff claims that he "suffered hostile work environment from HCC's agents and employees during the final months of his employment," *doc. 1* ¶ 73, events which would have occurred in 2018, approximately five years before he filed his charge with the NMHRB. Because Plaintiff certainly knew

about any actions by Defendant that would have constituted a hostile work environment at the time of his termination, these claims accrued on the date of his termination and are not subject to any tolling.  Plaintiff also argues in both his Complaint and his response to the instant Motion that Defendant took actions after Plaintiff's termination which constituted a hostile work environment including that Defendant "refused to answer or pay him" and "issued statements adversely affecting his reputation up until at least April 2023."  *Doc. 15* at 14.  However, a hostile work environment claim must relate to events that occurred during the plaintiff's employment and which "alter[ed] the conditions of [the plaintiff's] employment and create[d] an abusive working environment.  *Bolden v. PRC Inc.*, 43 F.3d 545, 550-551; *see also Ocana v. Am. Furniture Co.*, 91 P.3d 58, 69 (N.M. 2004) ("Hostile work environment occurs when the offensive conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.") (citation omitted).  Any actions taken by Defendant *after* Plaintiff's termination cannot have created a hostile working environment for Plaintiff *during* Plaintiff's employment.  As a result, the undersigned recommends dismissing Plaintiff's hostile work environment claim.

    *iii.*    *Retaliation*

For his retaliation claim, Plaintiff argues that Defendant HCC retaliated against him when it introduced the letter during the DOL administrative proceeding which

stated that Plaintiff was fired for "patient care issues." *Doc. 1* ¶¶ 46, 75-77.[4]  Plaintiff

claims that the allegation in the letter harmed his "professional reputation" as a

physician. *Doc. 15* at 13.  Further, Plaintiff argues that his retaliation claim survives the

300-day statute of limitations on Title VII and NMHRA claims because he did not know

about the existence of the letter until October 19, 2022, when he received access to

DOL's investigative file.  *Doc. 1* ¶ 46; *doc. 15* at 7.

Plaintiff's retaliation claim fails because Plaintiff has not pled any action by

Defendant which constitutes a materially adverse action under the law.  Under both

Title VII and the New Mexico Human Rights Act, a plaintiff must be able to prove a

prima facie case of retaliation by showing that (1) the plaintiff engaged in protected

activity, (2) the plaintiff suffered an action that a reasonable employee would have

found to be materially adverse, and (3) a causal connection existed between the

protected activity and the materially adverse action.  *Khalik v. United Air Lines*, 671 F.3d

1188, 1193 (10th Cir. 2012); *Ocana*, 91 P.3d at 72.  Adverse actions can include actions

taken by employers after the employee is no longer working for the employer.  *Robinson*

---

[4] Plaintiff argues elsewhere in his Complaint that "HCC continues to issue, or cause to issue, adverse
statements affecting his professional reputation to this date." *Doc. 1* ¶ 85.  The undersigned will not
consider this allegation in the analysis because it is conclusory and provides no concrete example of when
or how Defendant issued such a statement.

In addition, Plaintiff's response to the Motion argues that Defendant HCC retaliated against Plaintiff by
terminating him after he "brought the discriminatory comments and harassment by Ms. Brown to HCC's
attention." *Doc. 15* at 13.  Because the Complaint does not make this specific claim, *see doc. 1* ¶¶ 67-77, the
undersigned will not consider it in the analysis of the retaliation claim.  In addition, an amendment with
this allegation would not save Plaintiff's retaliation claim because, as noted, Plaintiff filed his
discrimination charge with the NMHRB well after 300 days after he was terminated.

*v. Shell Oil Co.*, 519 U.S. 337, 339 (1997) (finding that former employees may file retaliation claims against their former employers for actions taken after the employees are terminated, such as sending negative employment references to other employers). However, the adverse action must still "produce[] an injury or harm." *Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). In the instant case, Plaintiff has not alleged actual reputational harm caused by the letter beyond conclusory allegations which are insufficient under the 12(b)(6) standard. *Twombly*, 550 U.S. at 555. Based on Plaintiff's factual allegations, the only third-party aware of the letter was DOL. In fact, Plaintiff himself did not know about the letter until nearly three years after it was produced. Given this limited audience and the fact that Plaintiff prevailed before the DOL (*see doc. 1* ¶ 56), Plaintiff does not present a plausible claim that he experienced reputational harm from the letter.[5]

Because Plaintiff has failed to plead any adverse action taken by Defendant, the undersigned recommends that his retaliation claim be dismissed.

In summary, the undersigned recommends that Plaintiff's NMHRA and Title VII claims be dismissed.

---

[5] In reference to a different claim, Plaintiff states: "Upon information and belief, HCC may have shared [the information in the letter] with other individuals or entities." *Doc. 1* ¶ 123. This allegation, however, is conclusory, and does not provide actual examples of how and with whom the information was shared. It also does not provide any factual basis for why Plaintiff believes that this information was shared.

### B.  Count II - Discrimination, Hostile Work Environment, and Retaliation under 42 U.S.C. § 1981

The undersigned determines that Plaintiff's claims under § 1981 should be dismissed for the same reasons as his Title VII and NMHRA claims.  The statute of limitations for a § 1981 employment discrimination claim is equivalent to the statute of limitations for personal injury suits under relevant state law.  *E.E.O.C. v. Gaddis*, 733 F.2d 1373, 1377 (10th Cir. 1984).  In New Mexico, the statute of limitations for personal injury suits is three years.  N.M. Stat. Ann. § 37-1-8 (1978).  Based on the reasoning provided above, Plaintiff's discrimination and hostile work environment claims accrued on the date of Plaintiff's termination, over five years before Plaintiff filed the § 1981 claim in federal court, and these claims are not subject to tolling.  In addition, for the same reasons provided above, Plaintiff has not stated a retaliation claim under § 1981. *Somoza v. Univ. of Denver*, 513 F.3d 1206, 1211 (10th Cir. 2008) ("The test for establishing a prima facie case for retaliation is the same under both Title VII and 42 U.S.C. § 1981.") (citation omitted).  As a result, the undersigned recommends that the Court dismiss Plaintiff's claims under § 1981.

### C.  Count III – Breach of Covenant of Good Faith and Fair Dealing

Defendant next moves to dismiss Plaintiff's state law claim of breach of covenant of good faith and fair dealing.  For this claim, Plaintiff argues that Defendant provided him with a Hospitalist Physician Manual (the "Manual") which "provide[d] for a complaint resolution and peer-review process" and created an "implied contract

17

between [the] parties that HCC would follow a particular procedure for complaints."

*Doc. 1* ¶ 89-90.  Plaintiff claims that Defendant breached the covenant of good faith and

fair dealing with respect to this implied contract because it did not follow the Manual's

procedures when it terminated Plaintiff due to "patient care issues."  *Id.* ¶ 93.

Defendant argues that Plaintiff has not sufficiently alleged a "meeting of the minds"

necessary for the formation of an implied contract.  *Doc. 10* at 8-10.

 In New Mexico, employee handbooks or personnel policies can "give[] rise to an

implied contract if [they] controlled the employer-employee relationship and an

employee could reasonably expect his employer to conform to the procedures [they]

outlined."  *Newberry v. Allied Stores, Inc.*, 773 P.2d 1231, 1234 (N.M. 1989); *see also Lukoski*

*v. Sandia Indian Mngmt. Co.*, 748 P. 2d 507, 510 (N.M. 1988) ("[I]f an employer does

choose to issue a policy statement, in a manual or otherwise, and, by its language or by

the employer's actions, encourages reliance thereon, the employer cannot be free to only

selectively abide by it.") (quoting *Leikvold v. Valley View Comm. Hosp.*, 688 P.2d 170, 174

(Ariz. 1984)).  However, not all employee manuals will create an implied contract.  In

determining whether the employer and employee have entered an implied contract,

courts look to "evidence of custom or course of conduct between the parties" as well as

"written representations [and] oral representations" so long as "the representations

create a reasonable expectation of contractual rights."  *Wilson v. Berger Briggs Real Estate*

*& Ins., Inc.*, 497 P.3d 654, 661 (N.M. Ct. App. 2021).

The undersigned agrees that Plaintiff has not alleged sufficient facts to survive a motion to dismiss on this claim.  In his Complaint, Plaintiff provides only conclusory allegations regarding whether Defendant's conduct and/or representations would have led Plaintiff to "reasonably expect" that Defendant would abide by the policies and procedures in the Manual. *See doc. 1* ¶¶ 90-91 ("[The Manual] was an implied contract between parties"; "HCC"s actions during [Plaintiff's] employment further created a reasonable expectation in [Plaintiff's] mind that HCC would follow the defined process it outlined.").  Plaintiff does not allege any facts regarding how Defendant created this expectation, whether through its conduct or through oral/written representations.  As a result, the undersigned recommends that the Court dismiss this claim.

### D.  Counts IV and VI – Prima Facie Tort, IIED, and Unjust Enrichment

> i.      *Prima Facie Tort and Intentional Infliction of Emotional Distress*

Defendant moves to dismiss Plaintiff's prima facie tort and intentional infliction of emotional distress ("IIED") claims on the bases that the claims are barred by the statute of limitations, and, in the alternative, that Plaintiff has failed to state a claim upon which relief can be granted.  *Doc. 10* at 10, 12-13.  For his prima facie tort claim, Plaintiff argues that Defendant "injured [Plaintiff] by terminating his employment requiring him to leave the country [and] by not disclosing the correct reason for his firing misleading him into not reporting the event to [the] New Mexico Medical Board." *Doc. 1* ¶¶ 99-100.  Similarly, for his IIED claim, Plaintiff argues that Defendant

terminated Plaintiff for unlawful reasons, that the general circumstances of Plaintiff's termination were "outrageous[]," and that Defendant "acted intentionally and recklessly when it did not disclose the alleged true reason for terminating [Plaintiff's] employment until years after firing him." *Id.* ¶¶ 111-120. Although Plaintiff pled the prima facie and IIED claims as separate counts (Count IV and Count VI), the following analysis combines the claims based on the similarities between the claims.

First, to the extent that Plaintiff's prima facie tort and IIED claims are based upon unlawfully terminating his employment, they are barred by the statute of limitations. The statute of limitations for both prima facie tort and IIED claims is three years. N.M. Stat. Ann. § 37-1-8 (1978). Plaintiff's termination on October 5, 2018 occurred five years and four months before he filed his prima facie tort and IIED claims in federal court on February 5, 2024. *Doc. 1* ¶ 27. Because both claims are based on actions that Defendant took related to Plaintiff's termination, the statute of limitations for these claims has expired.

To the extent that Plaintiff's prima facie tort and IIED claims are based upon Defendant's alleged misrepresentation of the true reason for Plaintiff's termination, Plaintiff can and does argue that his delayed discovery saves these claims for the purposes of the statute of limitations. *Doc. 15* at 8-10; *doc. 1* ¶¶ 99, 118. Defendant's alleged misrepresentation occurred when Defendant first stated that Plaintiff was fired for breach of contract. According to Plaintiff, this statement was untrue because

Defendant later stated, as part of the DOL proceeding, that Plaintiff was fired for "patient care issues." *Doc. 1* ¶ 46. Because Plaintiff was not able to discover this misrepresentation until October 2022 when he first saw Defendant's letter, and he filed his claims in federal court within 3 years of seeing the letter, Plaintiff argues that his claims are not barred by the statute of limitations. Assuming without accepting this argument, the undersigned still determines that Plaintiff's prima facie tort and IIED claims based on the "misrepresentation" theory fail on their merits.

To prove a prima facie tort under New Mexico law, a plaintiff must show: "(1) An intentional, lawful act by the defendant; (2) An intent to injure the plaintiff; (3) Injury to the plaintiff; and (4) The absence of justification or insufficient justification for the defendant's acts." *Schmitz v. Smentowski*, 785 P.2d 726, 734 (N.M. 1990) (citing Restatement (Second) of Torts § 870 (Am. L. Inst. 1977) ("One who intentionally causes injury to another is subject to liability to the other for that injury, if his conduct is generally culpable and not justifiable under the circumstances.")). For an IIED claim, the plaintiff must show that: "(1) the conduct in question was extreme and outrageous; (2) the conduct of the defendant was intentional or in reckless disregard of the plaintiff; (3) the plaintiff's mental distress was extreme and severe; and (4) there is a causal connection between the defendant's conduct and the claimant's mental distress." *Trujillo v. N. Rio Arriba Elec. Co-op, Inc.*, 41 P.3d 333, 342 (N.M. 2001).

For both these claims, Plaintiff alleges that he was injured because the misrepresentation led Plaintiff to believe incorrectly that he did not need to report his termination to the New Mexico Medical Board.  However, Plaintiff fails to plausibly claim that Defendant's alleged misrepresentation was the cause of Plaintiff's failure to report his termination to the NMMB and any resulting injury.  Under New Mexico regulations, "[a]ll health care entities [and] licensees . . . shall report any action adversely affecting the clinical privileges of the licensee . . . within thirty days after the action is taken."  N.M. Admin. Code § 16.10.10.9(A).  One example of an "adversely affecting" action is "terminating employment for cause."  *Id.* § 16.10.10.7(B).  Thus, Plaintiff was under an independent legal obligation to report his termination to the NMMB, and he should have known that his termination for material breach of contract qualified as an adverse action under the regulations.  Any injury that resulted from Plaintiff's failure to report his termination was caused by his own actions and not those of Defendant.  Consequently, Plaintiff is unable to prove the causal elements of both the prima facie tort and IIED claims pursuant to his "misrepresentation" theory.

As both the "unlawful termination" and "misrepresentation" variants of Plaintiff's prima facie tort and IIED claims fail to state a plausible claim, the undersigned recommends dismissing them.

>        ii.       *Unjust Enrichment*

The undersigned also recommends that the Court dismiss Plaintiff's unjust enrichment claim because it is barred by the statute of limitations.  The basis for Plaintiff's unjust enrichment claim is that Defendant "knowingly with[held] his final paycheck and bonuses despite his constant reminders and communications about them." *Doc. 1* ¶ 99.  Plaintiff would have known at the time of his termination, or shortly thereafter, that Defendant had withheld Plaintiff's final paycheck.  The statute of limitations on an unjust enrichment claim is four years.  *See* N.M. Stat. Ann. § 37-1-4 (1978); *Guinn v. Williams*, No. A-1-CA-40578, 2024 WL 1719636, at *2 (N.M. Ct. App. Apr. 22, 2024).  Because Plaintiff's termination on October 5, 2018 occurred five years and four months before he filed this unjust enrichment claim for the first time in federal court on February 5, 2024, the statute of limitations on Plaintiff's unjust enrichment claim has run, and Plaintiff's claim should be dismissed on this basis.

In his response, Plaintiff argues that the unjust enrichment claim was tolled throughout the pendency of the DOL proceeding because the DOL was adjudicating issues related to Plaintiff's back wages.  *Doc. 15* at 8-9.  As noted above, although equitable tolling may apply when a plaintiff previously filed the same claim in the wrong forum, it does not apply when the plaintiff has "separate, distinct, and independent remedies" and has only chosen to file a subset of his potential claims. *Turgeau*, 446 F.3d at 1060 (citation omitted).  Plaintiff's claims before the Department of

Labor and his unjust enrichment claim both allegedly relate to the same underlying issue (unpaid wages).  However, the claims before DOL would have been filed pursuant to federal, rather than state tort, law and they may have afforded Plaintiff a different remedy than the unjust enrichment claim.  As a result, the unjust enrichment claim is a separate cause of action and was not tolled by the pendency of the DOL proceeding.

### E.  Count V – Negligent Misrepresentation and Common Law Fraud

Defendant next moves to dismiss Plaintiff's negligent misrepresentation and common law fraud claims.  For these claims, Plaintiff argues that, at the time of his termination, Defendant misrepresented the real reason for Plaintiff's termination which "misled" Plaintiff into not reporting his termination to the New Mexico Medical Board ("NMMB").  *Doc. 1* ¶¶ 109-110.  In particular, Plaintiff argues that if Defendant had originally told him that he was fired for "patient care issues" as opposed to a "material breach of contract," Plaintiff would have known he needed to report his termination to the medical board.  *Id.* ¶¶ 103-110.  Defendant first argues that Plaintiff's claims are barred by the four-year statute of limitations for negligent misrepresentation and common law fraud.  *Doc. 10* at 11.  In the alternative, Defendant argues that Plaintiff's

claims fail because the "alleged damage is too attenuated and remote from HCC's alleged misrepresentation." *Id.*

As with Plaintiff's prima facie tort and IIED claims, Defendant's alleged misrepresentation occurred when Defendant first stated that Plaintiff was fired for breach of contract. According to Plaintiff, this statement was untrue because Defendant later stated, as part of the DOL proceeding, that Plaintiff was fired for "patient care issues." *Doc. 1* ¶ 46. Because Plaintiff was not able to discover this misrepresentation until October 2022 when he first saw Defendant's letter, and he filed his claims in federal court within 3 years of seeing the letter, Plaintiff argues that his claims are not barred by the statute of limitations. Assuming without accepting this argument, Plaintiff's negligent misrepresentation and common law fraud claims fail on their merits.

The elements required to prove a negligent misrepresentation or common law fraud claim are very similar under New Mexico law. Both require that: (1) the defendant made a misrepresentation of fact; (2) the fact is known by the defendant to be false (or the representation was made recklessly); (3) the plaintiff relied on the representation to his detriment; and (4) the defendant intended to induce reliance by the plaintiff. *See Eoff v. Forrest*, 789 P.2d 1262, 1266 (N.M. 1990) (elements of fraud); *Robey v. Parnell*, 392 P.3d 642, 652 (N.M. Ct. App. 2017) (elements of negligent misrepresentation). First, the undersigned notes that the alleged "misrepresentation of

fact" is debatable.  Plaintiff has not pled that Defendant's statement that he was fired for material breach of contract is false.  Plaintiff argues that the various reasons provided for Plaintiff's termination (including material breach, patient care issues, and that Plaintiff was removed at the request of Defendant's clients) by Defendant are "mutually inconsistent and contradictory."  *Id.* ¶ 105.  However, "patient care issues" would almost certainly constitute a material breach of a physician's contract, and patient care issues are completely consistent with clients requesting that Plaintiff be removed.  As a result, Defendant's original statement, while vague, is not necessarily false or misrepresentative.  For the purposes of this motion, however, the undersigned will assume that Plaintiff's allegations plausibly satisfy the misrepresentation element.

Nonetheless, Plaintiff does not plausibly claim that Defendant intended for Plaintiff to rely on the statement to his detriment.  Plaintiff's essential theory is that Defendant misrepresented that his termination was for "material breach of contract," and it intended for Plaintiff to rely on that characterization such that Plaintiff would not report the termination to the NMMB.  However, as explained in detail in the section regarding Plaintiff's prima facie tort and IIED claims, *supra* at 22, Plaintiff had an independent obligation under New Mexico regulations to report his termination to the NMMB even if it had been just as Defendant initially described it – "material breach of contract."  *See* N.M. Admin. Code § 16.10.10.9(A).  So, it is completely implausible that

Defendant made the alleged misrepresentation intending that Plaintiff rely on it for the

proposition that an NMMB report was not required.

Thus, the undersigned recommends dismissing Plaintiff's negligent

misrepresentation and common law fraud claims.

### F.   Count VII – Defamation and False Light

Defendant next moves to dismiss Plaintiff's defamation and false light claims.

For these claims, Plaintiff argues that Defendant's statement during the Department of

Labor proceeding that Plaintiff was terminated for "patient care issues" constituted

defamation and "plac[ed] him before the public in a false position." *Doc. 1* ¶¶ 122-23.

Defendant first contends that any statements made by Defendant during the DOL

proceeding were protected by the litigation privilege and not subject to defamation or

false light claims. *Doc. 10* at 14.  In the alternative, Defendant argues that the claims are

barred by the statute of limitations because the statements were made in 2019, more

than three years before the claim was filed in 2024. *Id.* at 14-15.  Lastly, Defendant

argues that the claims fail on the merits because the statements were not public. *Id.* at

15-17.

The undersigned agrees that Defendant's statement during the DOL proceeding

was protected by the litigation privilege.  Under New Mexico law, statements which are

subject to "an absolute or unqualified privilege" have "absolute immunity from liability

for defamation." *Baker v. Bhajan*, 871 P.2d 374, 377 (N.M. 1994) (citation omitted).  New

27

Mexico courts have recognized an absolute privilege with respect to "statements in judicial and legislative proceedings," *id.*, as well as statements made in "quasi-judicial hearing[s]," *Neece v. Kantu*, 507 P.2d 447, 453 (N.M. Ct. App. 1973) (finding that a letter resolving the parties' claims written by a hearing officer in a labor-grievance-arbitration proceeding was subject to the litigation privilege). The privilege is applied in situations "in which there is an obvious policy in favor of complete freedom of expression regardless of the defendant's motives." *Baker*, 871 P.2d at 377. For example, attorneys are afforded the privilege for statements made in relation to litigation so that they have the "utmost freedom in their efforts to secure justice for their clients." *Helena Chem. Co. v. Uribe*, 281 P.3d 237, 241 (N.M. 2012) (citation omitted). Despite Plaintiff's argument that the DOL proceeding was not judicial because it was only an investigation in which Plaintiff had no ability to participate, the DOL proceeding was a judicial, or at least quasi-judicial proceeding. Plaintiff brought a complaint, and both parties presumably presented evidence in favor of their respective side. DOL then examined the evidence and determined whether Plaintiff's complaint had merit. Like statements made by attorneys in their "efforts to secure justice for their clients," the allegedly defamatory statement was made by Defendant as part of its defense. As a result, the undersigned concludes that a New Mexico court would find Defendant's statement to be protected from defamation claims by the litigation privilege. With respect to the false light claim, although New Mexico courts do not appear to have specifically applied the litigation

privilege to false light claims, false light claims are a "close cousin" of defamation claims, *Andrews v. Stallings*, 892 P.2d 611, 625 (N.M. 1995), and the undersigned sees no reason why the underlying policy of protecting client advocates from liability for statements made during litigation would apply differently to false light claims.  *See also Rothman v. Emory Univ.*, 828 F.Supp. 537, 543 (N.D. Ill. 1993) (finding that a statement to a quasi-judicial state board was privileged with respect to both the plaintiff's defamation and invasion of privacy (false light) claims).  Based on the applicability of the litigation privilege to the statements forming the basis of Plaintiff's defamation and false light claims, the undersigned recommends their dismissal.

Even assuming that the litigation privilege does not apply, Plaintiff's defamation and false light claims fail on the merits.[6]  The elements of a defamation action include the publication to a third party by the defendant of a false statement of fact about the

---

[6] Defendant argues that Plaintiff's defamation and false light claims fail due to the expiration of the statute of limitations.  Plaintiff argues that the secret publication rule applies to his defamation and false light claims meaning that the statute of limitations did not start to run until Plaintiff was made aware of Defendant's statement on October 19, 2022.  *See doc. 15* at 10.  Under the secret publication rule, the statute of limitations on a defamation claim may be tolled until the plaintiff discovers the defamatory statements as long as the statements are "published under circumstances in which they are likely to be kept secret from the injured party for a considerable time" and the statements are not otherwise made public.  *Clark v. Airesearch Mfg. Co. of Ariz., Inc., a Div. of Garrett Corp.*, 673 P.2d 984, 986 (Ariz. Ct. App. 1983).  Although New Mexico has not formally adopted the secret publication rule, it is not infeasible that it would.  *See, e.g., Jacobs v. Journal Pub. Co.*, 2022 WL 1554737, at *8 (D.N.M. May 17, 2022), report and recommendations adopted by *Jacobs v. Journal Pub. Co.*, 2022 WL 2751718 (D.N.M. July 14, 2022).  For the purposes of this Motion, the undersigned will assume that the secret publication rule applies to these facts.  If it did, Defendant's allegedly defamatory statement may be subject to the secret publication rule given that it was made in a confidential, non-public setting (the DOL proceeding) and Plaintiff did not have reason or ability to discover the statement until several years after it was made.  As such, the undersigned will not recommend dismissal of these claims on the basis of the statute of limitations.

plaintiff which causes actual injury to the plaintiff.  *Newberry*, 773 P.2d at 1236; *see also*

N.M. Rules Ann. Civ. UJI 13-1002 (1986).  The elements of a false light claim include:

"(1) the plaintiff was portrayed in a false light, i.e., the matter published concerning the

plaintiff is not true; (2) that the false portrayal would be highly offensive to a reasonable

person such that the plaintiff would be justified in the eyes of the community in feeling

seriously offended and aggrieved by the publicity; and (3) that the publisher had

knowledge of or acted in reckless disregard as to the falsity of the publicized matter and

the false light in which the other would be placed."  *Young v. Wilham*, 406 P.3d 988,

1007-08 (N.M. Ct. App. 2017) (citations and quotations omitted).

Plaintiff's defamation and false light claims fail on the merits because Plaintiff

has not alleged that Defendant's statement was publicized in such a way that led to any

actual harm.  As discussed, Defendant HCC's statement that Plaintiff was fired for

"patient care issues" was made in a letter that Defendant sent to the DOL as part of the

DOL's investigation into Plaintiff's wage complaints.  Plaintiff makes no allegations that

Defendant made this statement in any other forum or to any other entity.  Although he

alleges that "[u]pon information and belief, HCC may have shared this statement with

other individuals or entities" (*doc. 1* ¶ 123), this conclusory statement can be

disregarded.  *See Iqbal*, 556 U.S. at 678.  Since DOL is the only entity identified as seeing

the statement, Plaintiff cannot credibly claim that he experienced actual injury or that he

"would be justified in the eyes of the community in feeling seriously offended and

aggrieved" as a result of the statement, particularly given that he was the prevailing party in the DOL proceedings. *Id.* ¶¶ 44, 56; *see Young*, 406 P.3d at 1007-08.

Plaintiff also fails to provide any concrete examples of actual harm caused by the statement. Plaintiff alleges that he "suffered an actual injury to his reputation when he was required to defend against [the statement] before the New Mexico Medical Board," but this allegation does not make sense with the overall fact pattern that Plaintiff presents. *Id.* ¶ 124. Plaintiff alleges that he was reprimanded by the NMMB in 2021 "*for his failure to report termination of his employment,*" *doc. 1* ¶ 43 (emphasis added), not for anything related to his patient care. In addition, he alleges that he did not know about Defendant HCC's statement until October 2022. *Id.* ¶ 46. Plaintiff could not have defended himself against a statement about which he was not aware. Further, Plaintiff never alleges that Defendant made any statements to the NMMB; in fact, he implies that Defendant did nothing with respect to the NMMB investigation. *Id.* ¶ 37. Thus, the only harm that Plaintiff alleges resulting from Defendant's statement is harm to his "professional reputation" as well as "personal humiliation and mental anguish and suffering." *Id.* ¶ 126. These conclusory allegations are not sufficient to show either actual injury for purposes of the defamation claim or that the statement was "highly offensive" enough to justify Plaintiff's offense and anguish for purposes of the false light claim.

In addition to a lack of actual harm, Plaintiff's claims fail on the merits because Plaintiff has not alleged that the statement that Plaintiff was fired for "patient care issues" was false or portrayed him in a false light.  Plaintiff's only basis for contending that the statement was false is that Defendant HCC originally stated that Plaintiff was fired for material breach of contract and then later stated in the letter that Plaintiff was fired for "patient care issues."  *Doc. 1* ¶ 125.  However, given that Plaintiff does not provide any explanation for what other material breach of contract may have occurred, the material breach of contract for which he was fired may have been the "patient care issues." [7]  Indeed, Plaintiff does not allege in his Complaint that he did not have patient care issues during his employment with Defendant, although he makes this claim in his response to the Motion.  *See doc. 15* at 7 (stating for the first time that "his work performance was impeccable" and citing *doc. 1* ¶¶ 19, 51 which only allege that Defendant "provided him commendation letters recognizing his contributions to HCC's business" and that Defendant did not "communicate[] with [Plaintiff] regarding any alleged 'patient care issues'" during his employment).  Even if Plaintiff believes that Defendant had additional motives and reasons for terminating Plaintiff, Plaintiff has

---

[7] Elsewhere in his Complaint, Plaintiff appears to admit that "patient care issues" was an accurate reason for Plaintiff's termination (at least in Defendant's opinion).  *Doc. 1* ¶¶ 71, 118 ("HCC actively misled [Plaintiff] by not disclosing the actual reason for terminating his employment" at the time of Plaintiff's termination; "HCC acted intentionally and recklessly when it did not disclose the alleged true reason for terminating Dr. Saini's employment until years after firing him.").

not provided enough factual basis to show that patient care issues was not one of those reasons.

Based on the foregoing analysis, the undersigned recommends that the Court dismiss Plaintiff's defamation and false light claims.

### G.  Count VIII – Contractual and Common Law Indemnification

Finally, Defendant moves to dismiss Plaintiff's contractual and common law indemnification claim (Count VIII) on the basis that indemnification does not apply to the facts of this case.  Based on the foregoing reasons, the undersigned agrees with Defendant.

The logic of Plaintiff's indemnification claim appears to be as follows: (1) Defendant HCC failed to report Plaintiff's termination to the New Mexico Medical Board ("NMMB") in violation of New Mexico regulations that require "health care entities" to report adverse actions against individuals licensed by the NMMB, *see* N.M. Admin. Code § 16.10.10.9(A); (2) Plaintiff also failed to report his termination to the NMMB, *doc. 15* at 21; (3) The NMMB was an "injured party" due to Plaintiff's and Defendant's failure to report Plaintiff's termination, *id.*; (4) The NMMB "pursue[d] its claims" against only Plaintiff by "publicly reprimand[ing] [Plaintiff] for his failure to report termination of his employment", *id.*; *see also doc. 1* ¶ 43; (5) Because Defendant was also "liable" to the NMMB for not reporting Plaintiff's termination, Defendant should indemnify Plaintiff for the losses/damages Plaintiff incurred when he was

reprimanded by the NMMB, *doc. 15* at 21.  Based on this logic, Plaintiff brings a

common law indemnification claim.  He also states that his employment contract

contained an indemnification clause, and he brings a contractual indemnification claim

based on Defendant's alleged violation of this contractual clause.  *Id.* at 20.

The facts of this case do not support a common law indemnification claim.

Under common law indemnification, "the person who has been held liable for another's

wrongdoing" is granted "an all-or-nothing right of recovery from a third party, such as

the primary wrongdoer."  *New Mexico Pub. Schs. Ins. Auth. v. Arthur J. Gallagher & Co.*,

198 P.3d 342, 349 (N.M. 2008) (quoting *Vista Hills v. Shollenbarger Wood Treating, Inc.*, 893

P.2d 438, 441 (N.M. 1995)).  For common law indemnification to apply, both the

indemnitor and the indemnitee must be liable in tort to the third party.  *Id.*  In the

instant case, Plaintiff is arguing that he is the indemnitee because he was held liable for

another's wrongdoing, Defendant is the indemnitor because it is the other wrongdoer,

the NMMB is the injured third party, and both Plaintiff and Defendant are liable in tort

to the NMMB due to their failure to report Plaintiff's termination.  *Doc. 15* at 20-21.  The

problem with Plaintiff's logic, however, is that no party is liable in tort to the NMMB.

Even assuming that both Plaintiff and Defendant were in violation of New Mexico

regulations that required them to report Plaintiff's termination to the NMMB, the

NMMB was not "injured" in tort by the parties' failure to report the termination.  The

NMMB was also not "pursu[ing] its claims" against Plaintiff when it reprimanded him;

it was merely carrying out its duties as a governmental regulatory body to enforce New

Mexico regulations.  Because there is no injured third-party, common law

indemnification does not make legal sense in the context of this case.

Plaintiff is similarly unable to prove a contractual indemnification claim.

Plaintiff states that his employment contract provided that Defendant would indemnify

Plaintiff "from an[d] against any and all liabilities, costs, claims, losses, damages,

expenses, and attorney's fees resulting from or attributable to any and all acts,

representations, promises, warranties, and/or omissions of [Defendant]."[8]  *Id*. at 20.  For

this contract clause to apply, Plaintiff would need to prove that his "liabilities, costs,

claims, losses, damages, expenses, and attorney's fees" that arose from his proceedings

before the NMMB were the result of or attributable to an action that Defendant took.

The only liabilities and costs that Plaintiff alleges arose from the NMMB proceeding

include a reprimand by the NMMB for "[Plaintiff's] failure to report termination of

employment," *doc. 1* ¶ 43, as well as "attorneys' fees and costs incurred in proceedings

of . . . New Mexico Medical Board," *id.* at 16.  Given that the NMMB reportedly

reprimanded Plaintiff for *Plaintiff's* failure to report his termination, it does not appear

---

[8] Plaintiff includes the alleged language of the indemnification clause of his employment contract for the first time in his response to the instant Motion.  The Complaint only contains a conclusory allegation that Defendant "did nothing to defend or indemnify [Plaintiff] as defined required [sic] by their employment contract."  *Doc. 1* ¶ 37.  Although Plaintiff did not provide the contract language in the Complaint, the undersigned will consider it for purposes of the instant motion given that *pro se* Complaints should be construed liberally and Plaintiff pled that his employment contract contained an indemnification clause. In addition, Defendant did not raise this issue as a basis for dismissing the claim.  *See doc. 19* at 12.

that the liabilities or costs incurred by Plaintiff had any relation to Defendant's action or inaction.  Plaintiff argues that his failure to report his termination was caused by Defendant's misrepresentation regarding the reason for Plaintiff's termination.  *Doc. 15* at 21.  However, as previously explained in the section on Plaintiff's prima facie tort and IIED claims, *supra* at 22, Plaintiff had an independent legal obligation to report his termination for cause.  *See* N.M. Admin. Code § 16.10.10.9(A).  As a result, any liabilities or costs that arose from the NMMB proceedings were a result of Plaintiff's actions and not a result of any action by Defendant.

Thus, the undersigned recommends dismissal of Plaintiff's contractual and common law indemnification claim.

### H.  Pleading Amendments

In his Response, Plaintiff does not seek to amend his complaint to address the issues raised in the Motion.  Consequently, it is impossible for the undersigned to judge whether any amendment, if permitted, would solve the deficiencies identified herein.  If Plaintiff claims the existence of additional facts with which he would like to amend his complaint, he must file a motion to amend within 14 days.  This motion, if filed, must be in addition to and separate from any objections filed as described below.

## IV.   CONCLUSION

Based on the foregoing reasoning, the undersigned RECOMMENDS the

following:

(1) The Court GRANT Defendant Hospital Care Consultants, Inc.'s Motion to

Dismiss (*doc. 10*);

(2) Assuming Plaintiff does not file a motion to amend, or if the Court deems any

such motion is futile, the Court DISMISS WITH PREJUDICE Plaintiff's

Complaint.

_____
GREGORY B. WORMUTH
CHIEF UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**