IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

VINAY SAINI,

      Plaintiff,

vs.                                  Case No.  24-cv-00113-MV-GBW

HOSPITAL CARE CONSULTANTS,

      Defendant.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO REPLY, OVERRULING OBJECTIONS, ADOPTING THE MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION, AND DENYING PLAINTIFF'S MOTION TO AMEND**

THIS MATTER comes before the Court on Plaintiff's objections to the Magistrate Judge's Proposed Findings and Recommended Disposition ("PFRD") [Doc. 23] and Plaintiff's Motion to Amend, [Doc. 24]. The Magistrate Judge filed his PFRD on July 30, 2024. Doc. 22. The PFRD notified the parties of their ability to file objections within fourteen days, and that failure to do so waived appellate review. *Id.* at 37. On August 12, 2024, Plaintiff filed objections to the Magistrate Judge's PFRD (Doc. 23), Defendant responded to Plaintiff's objections on August 26, 2024 (Doc. 25), and Plaintiff filed a reply in support of his objections on September 9, 2024 (Doc. 28).[1] Plaintiff also filed a Motion to Amend Original Complaint on

---

[1] Plaintiff filed a Motion for Leave to File Reply in Support of Objections to Magistrate Judge's Report and Recommendation on September 9, 2024, and attached his Reply in Support of Objections to Magistrate Judge's Report as Exhibit 1. *See* Doc. 28. Although reply briefs in support of objections are not contemplated by Fed. R. Civ. P. 72(b), which allows for a response to objections, the Court will grant Plaintiff's motion and consider Plaintiff's reply attached as Exhibit 1 to his Motion for Leave to File Reply in Support of Objections to Magistrate Judge's Report and Recommendation. *See id.* at 4-10.

August 12, 2024. Doc. 24. Defendant responded to the Motion to Amend on August 26, 2024
(Doc. 26), and briefing was complete with the filing of Plaintiff's Reply on September 9, 2024
(Doc. 27).

Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the Court has conducted a
de novo review of the record and all parts of the Magistrate Judge's PFRD that have been
properly objected to. After conducting this de novo review and having thoroughly considered
the Magistrate Judge's PFRD and the objections, the Court finds no reason either in law or fact
to depart from the Magistrate Judge's recommended disposition. The Court also finds that
Plaintiff's Motion to Amend should be denied as futile.

## I.    Plaintiff's Objections to the PFRD

Although the majority of Plaintiff's objections are directly addressed by the Magistrate
Judge's PFRD, the Court will address two of Plaintiff's objections below.

### A. Department of Labor Wage and Hour Division Investigation

Many of Plaintiff's objections center around the argument that Plaintiff's employment
discrimination claims under Title VII and the New Mexico Human Rights Act were tolled
throughout the pendency of Plaintiff's proceeding before the Department of Labor, Wage and
Hour Division (DOL WHD). *See* Doc. 23 at 3-12. The Court agrees with the Magistrate Judge's
findings that because Plaintiff's wage claims before the DOL WHD were "separate, distinct, and
independent" from his employment discrimination claims, the DOL WHD proceeding did not
toll Plaintiff's discrimination claims. *See* Doc. 22 at 11 (citing *Turgeau v. Admin. Rev. Bd.*, 446
F.3d 1052, 1060 (10th Cir. 2006)). The Court also agrees with the Magistrate Judge's findings
that Plaintiff had a reasonable basis to suspect discrimination and bring an employment

2

discrimination claim at the time of his termination, nearly five years before he brought his claim before the New Mexico Human Rights Board.[2]  *Id.* at 7, 13.  However, the Court will specifically address one of Plaintiff's objections regarding the interaction between the DOL WHD proceedings and employment discrimination claims before the Department of Justice Office of Special Counsel.

Plaintiff filed a complaint against Defendant HCC with the DOL WHD in July 2019, approximately nine months after he was terminated from his job with Defendant on October 5, 2018.  Doc. 1 ¶¶ 27, 38.  Plaintiff acknowledges that the DOL WHD does not handle employment discrimination claims, *see* Doc. 23 at 7, but he notes that the DOL WHD has a memorandum of understanding ("MOU") with the Office of Special Counsel at the Department of Justice ("OSC"), which does handle employment discrimination claims on behalf of workers on an immigrant visa, like Plaintiff.  Under the statute that authorizes the OSC to handle employment discrimination claims, an individual may not concurrently file a complaint with the OSC and a Title VII complaint with the EEOC.  8 U.S.C. § 1324b(b)(2).  Plaintiff argues that, due to the MOU between the OSC and the DOL WHD, Plaintiff's complaint before the DOL WHD was effectively a complaint before the OSC, and thus Plaintiff could not have filed a Title VII claim with the EEOC during the pendency of the DOL WHD proceedings.  Doc. 23 at 10-11.

Plaintiff's tolling argument does not persuade the Court.  The MOU between the OSC and the DOL WHD does not mean that Plaintiff's complaint before the DOL WHD was also a claim before the OSC.  The MOU allows the two agencies to refer claims to one another "where

---

[2] A claim under NMHRA or Title VII must be brought within 300 days of the alleged unlawful employment practice.  *See* N.M. Stat. Ann. § 28-1-10(A); 42 U.S.C. § 2000e-5(e)(1).

appropriate and to the extent allowable by law, policy, and [agency] resources." *See* MOU at 4-5.[3] For example, if an individual files a wage claim with the DOL WHD, and the DOL WHD has reason to believe that the individual was a victim of employment discrimination, the DOL WHD should, according to the MOU, refer the discrimination claim to the OSC and establish a point of contact at the OSC. *Id.* If one agency refers a claim to the other agency, the MOU encourages the agencies to treat the referred claim as if it were filed on the date the claim was filed with the original agency. *Id.* at 5. The MOU does not, however, state that all claims filed with one agency are automatically filed with the other agency. It also does not permit the DOL WHD to adjudicate discrimination claims on behalf of the OSC. Plaintiff never alleges that he filed a claim with the OSC or even that his DOL WHD claim was referred to the OSC pursuant to the MOU. In fact, Plaintiff's claim could not have been referred to the OSC, because he filed his complaint with the DOL WHD nine months after he was fired, and complaints must be filed with the OSC no more than 180 days after the unfair immigration-related employment practice occurs. 8 U.S.C. § 1324b(d)(3). Because Plaintiff never filed a complaint with the OSC, he was not barred from filing a complaint with the EEOC throughout the pendency of the DOL WHD proceeding, and the DOL WHD proceeding did not otherwise toll his discrimination claims.

## B. Plaintiff's Independent Obligation to Report His Termination

Next, Plaintiff generally objects to the Magistrate Judge's finding that Plaintiff had an independent obligation to report his termination to the New Mexico Medical Board. The basis of many of Plaintiff's claims, including his retaliation claim under the NMHRA and Title VII, the

---

[3] *Memorandum of Understanding Between OSC and DOL WHD Regarding Information Sharing and Case Referral*, January 13, 2017. Last accessed August 26, 2024, from https://www.dol.gov/sites/dolgov/files/WHD/legacy/files/DOJ.pdf

prima facie tort and IIED claims, and the negligent misrepresentation and common law fraud claims, is that Plaintiff experienced harm when he was reprimanded by the NMMB for his failure to report his termination to the NMMB. *See* Doc. 1 at ¶¶ 43, 83, 99, 104, 106, 118-119. Plaintiff argues that this harm was caused by Defendant HCC because Defendant HCC originally told Plaintiff that he was fired for "breach of contract" and then later claimed that he was fired for "patient care issues." *Id.* at ¶¶ 27, 46. Plaintiff claims that if Defendant HCC had originally told him that he was fired for patient care issues, he would have known to report his termination to the NMMB.

As noted in the PFRD, New Mexico regulations state that "[a]ll . . . licensees . . . shall report any action adversely affecting the clinical privileges of the licensee . . . within thirty days after the action is taken." N.M. Admin. Code § 16.10.10.9(A) (in effect on September 17, 2018). "Adversely affecting means reducing, restricting, suspending, revoking, denying, or failing to renew clinical privileges, or membership in a health care entity to include: terminating employment for cause." *Id.* § 16.10.10.7(B) (in effect on September 17, 2018). The Magistrate Judge relied on these regulations to conclude that Plaintiff had an independent obligation to report his termination to the NMMB; in other words, Defendant HCC's alleged failure to provide him with the correct reason for his termination did not cause Plaintiff harm. Doc. 22 at 22.

In his objections, Plaintiff argues that the Magistrate Judge improperly relied on a newer version of the regulations that was not in effect at the time of Plaintiff's termination. Doc. 23 at 21. In particular, Plaintiff argues that the "Definitions" section of the relevant portion of the code was updated in 2022 to include "staffing agency" as a type of "Health care entity." *Id.*; *see* N.M. Admin. Code § 16.10.10.7(E) (2022). Because Defendant HCC is a staffing agency, *see*

Doc. 1 ¶ 8, it was not covered by these regulations at the time of Plaintiff's termination in October 2018, and it had no obligation to report Plaintiff's termination. Plaintiff then makes a logical leap to argue that since Defendant HCC had no obligation to report Plaintiff's termination, Plaintiff also did not have an obligation to report his termination by a staffing agency. Doc. 23 at 21. However, Plaintiff's termination from Defendant HCC meant that he was no longer employed and could no longer exercise his clinical privileges at the Gila Regional Medical Center where he had been a practicing physician.[4] Doc. 1 ¶¶ 27, 33. Because Plaintiff was a licensee in the state of New Mexico, he was required to report this adversely affecting action to the NMMB under N.M. Admin. Code § 16.10.10.9(A) (2018), regardless of whether Defendant HCC also had any independent reporting obligations. Indeed, if Plaintiff's reporting obligations under the regulations were completely dependent on whether he was terminated by a staffing agency rather than a different kind of health care entity, the reason for his termination (breach of contract versus patient care issues) would not have been relevant, and he would not have received the reprimand from the NMMB for his failure to report his termination.

## II.    Motion to Amend

The Court turns to addressing the merits of Plaintiff's Motion to Amend. Doc. 24.

## A. Legal Standard

Under Rule 15 of the Federal Rules of Civil Procedure, leave to file an amended complaint is within the discretion of the Court and shall be freely given. Fed. R. Civ. P.

---

[4] In fact, in his Motion to Amend and attached proposed amended complaint, Plaintiff admits that his "clinical privileges" at the medical center "were contingent upon his continued employment with HCC" and "automatically ended upon termination of his employment with HCC." Doc. 24 ¶¶ 42-43.

6

15(a)(2); *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006). However,

amendment may be denied when it would be futile. *Full Life Hospice, LLC v. Sebelius*, 709 F.3d

1012, 1018 (10th Cir. 2013). "A proposed amendment is futile if the complaint, as amended,

would be subject to dismissal." *Id.* (quoting *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir.

2004)).

### B. Analysis

Plaintiff's proposed amended complaint brings identical claims to his original complaint:

discrimination, hostile work environment, and retaliation under the NMHRA and Title VII

(Count I); discrimination, hostile work environment, and retaliation under 42 U.S.C. § 1981

(Count II); breach of covenant of good faith and fair dealing (Count III); prima facie tort and

unjust enrichment (Count IV); negligent misrepresentation and common law fraud (Count V);

intentional infliction of emotional distress (IIED) (Count VI); defamation and false light (Count

VII); and contractual and common law indemnification (Count VIII). Doc. 24 at 17-30.

The PFRD, which the Court fully adopts, recommends that the following claims be

dismissed on the basis that the statute of limitations for these claims has expired: discrimination

and hostile work environment claims under the NMHRA, Title VII, and § 1981 and the unjust

enrichment claim. *See* Doc. 22 at 8-9, 13-14, 17, 23-24. As explained above, Plaintiff's claims

were not tolled throughout the DOL proceeding. In addition, Plaintiff had a sufficient basis to

bring discrimination, hostile work environment, and unjust enrichment claims at the time of his

termination, and Plaintiff has not alleged any facts that support a contrary finding. Thus, any

amendment on those claims would be futile.

Next, the PFRD recommended dismissal of Plaintiff's prima facie tort, IIED, negligent

misrepresentation, and common law fraud claims on the basis that Defendant HCC did not cause

Plaintiff's alleged harm under these legal theories.  Doc. 22 at 22, 26.  Under these claims,

Plaintiff alleges that Defendant HCC misled Plaintiff about the true reason for his termination,

which led Plaintiff to believe incorrectly that he did not have to report his termination to the New

Mexico Medical Board (NMMB).  Doc. 24 ¶¶ 166, 183-92.  The basis of Plaintiff's retaliation

claims under the NMHRA, Title VII, and § 1981 is also that Defendant harmed Plaintiff by

providing varying and misleading reasons for Plaintiff's termination, which led Plaintiff not to

report his termination to the NMMB.  Doc. 24 ¶ 123, 131-136.  As detailed above, the Court

agrees with the Magistrate Judge that Plaintiff had an independent obligation to report his

termination to the NMMB.  *Supra* at 4-6.  Because Plaintiff's reprimand from the NMMB was

caused by his own failure to follow relevant regulations, Defendant HCC's action or inaction did

not cause Plaintiff's harm.  Plaintiff cannot allege the above tort or retaliation theories as a

matter of law, and any amendment to these claims is futile.

 The remaining claims include Plaintiff's breach of covenant of good faith and fair

dealing, defamation and false light, and contractual and common law indemnification claims.

The Court will address each in turn.

  i.  *Breach of Covenant of Good Faith and Fair Dealing*

 In his proposed amended complaint, Plaintiff argues that Defendant HCC breached its

covenant of good faith and fair dealing with Plaintiff when it failed to investigate patient

complaints against Plaintiff in accordance with an alleged implied contract that was created by

Defendant's "Hospitalist Physician Manual." *Doc. 24* ¶¶ 148-158.  However, a breach of the

covenant of good faith and fair dealing claim is appropriate in situations when a party to a

contract "seeks to prevent the contract's performance or to withhold its benefits from the other party" and not when one of the parties simply violates one or more of the terms of the contract. *Smoot v. Physicians Life Ins. Co.*, 87 P.3d 545, 548-49 (N.M. Ct. App. 2003). Because Plaintiff is alleging that Defendant breached a term of an implied contract with Plaintiff, Plaintiff has again brought the wrong claim, and his amended complaint would not survive a motion to dismiss on this claim.

  *ii. Defamation and False Light*

  Plaintiff argues that Defendant HCC defamed him and placed him in a false light when it made the statement that Plaintiff was terminated for patient care issues. In the PFRD, the Magistrate Judge found that Plaintiff's defamation and false light claims failed for three main reasons: (1) The statement was only alleged to have been made during the DOL WHD proceeding and was thus protected by the litigation privilege, Doc. 22 at 27-29; (2) Plaintiff did not allege any concrete harm arising from the statement, *id.* at 30-31; and (3) Plaintiff did not allege that the statement was false or placed him in a false light, *id.* at 32-33.

  In the proposed amended complaint, Plaintiff now alleges that Defendant HCC shared this statement with "other individuals or entities," including "NMMB, GRMC [Gila Regional Medical Center], and others." Doc. 27 ¶¶ 209-10. He alleges that he is "compelled to explain this false statement and circumstances surrounding the termination of his employment and NMMB investigation to other individuals, future employers, and other healthcare entities." *Id.* ¶ 214. He also alleges that he "suffered an actual injury to his reputation when he was investigated by NMMB for his failure to adequately report the circumstances of the termination of his employment and required to appear and defend his license before NMMB." *Id.* ¶ 215. Although

Plaintiff has alleged that other entities and individuals heard the statement, Plaintiff still has not alleged that he experienced concrete harm from the statement for purposes of either the defamation or false light claim. Plaintiff appears to be arguing that he has experienced harm stemming from the NMMB hearing and reprimand. For instance, he specifically claims that he was investigated by NMMB "for his failure to adequately report the circumstances" of his termination. *Id.* ¶ 215. Outside of the allegations that he has to explain the circumstances of his termination to future employers, something which would likely be true regardless of the basis for his termination, Plaintiff has not alleged that he experienced concrete harm from the statement itself. For example, Plaintiff does not claim that he was unable to acquire another position due to the new employer's concerns that Plaintiff was unable to work with patients. Given that Plaintiff's proposed amended complaint still does not allege any harm from the purportedly defamatory statement, Plaintiff's amendment on these claims is futile.

  *iii.*  *Contractual and Common Law Indemnification*

  The PFRD recommends dismissal of Plaintiff's contractual and common law indemnification claim because Plaintiff did not identify a third party who was injured in tort by any of Defendant HCC's actions or inactions. Doc. 22 at 33-35. The proposed amended complaint does not allege any facts that would correct this issue. *See* Doc. 24 ¶¶ 223-30. As a result, Plaintiff's amended complaint with respect to this claim is futile.

**III.** **Conclusion**

  Based on the foregoing reasoning, the Court finds that Plaintiff's objections to the Magistrate Judge's PFRD do not have merit. In addition, the Court finds that Plaintiff's proposed amended complaint is futile.

10

**IT IS THEREFORE ORDERED AS FOLLOWS:**

1. The objections of Plaintiff are OVERRULED;

2. The Magistrate Judge's Proposed Findings and Recommended Disposition (Doc. 22) are ADOPTED;

3. The Court DENIES Plaintiff's Motion to Amend (Doc. 24) as futile; and

4. The Court DISMISSES Plaintiff's Original Complaint (Doc. 1) WITH PREJUDICE.

MARTHA VÁZQUEZ
SENIOR UNITED STATES DISTRICT JUDGE